*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, DALY, and MIZER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Peter G. VAZQUEZ**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202200241**

_____

Decided: 2 February 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Matthew R. Brower

Sentence adjudged 29 July 2022 by a general court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 60 months, forfeiture of all pay and allowances, and a dishonorable discharge.

For Appellant:
*Captain Edward V. Hartman, JAGC, USN*

For Appellee:
*Lieutenant Ebenezer K. Gyasi, JAGC, USN*
*Major Mary C. Finnen, USMC*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

A military judge sitting alone as a general court-martial convicted Appellant, consistent with his pleas, of one specification of possession of child pornography and one specification of soliciting the commission of an offense, in violation of Articles 134 and Article 82, Uniform Code of Military Justice [UCMJ],[1] for possessing and soliciting nude photos from a 14-year-old minor, Ms. Kilo.[2]

In his sole assignment of error, Appellant asserts that his sentence including 60 months of confinement was greater than necessary to achieve the goals of sentencing in the military justice system. We find no error and affirm.

## I. BACKGROUND

In the summer of 2020, Appellant met Ms. Kilo on a Facebook group page for those interested in the practice of "Daddy Dominate Little Girl" [DDLG], a type of sexual relationship which includes bondage, domination, sadism, and masochism, where one party acts as a dominant caregiver and the other party acts as a submissive child.[3] Both Appellant and Ms. Kilo posted in the group looking for partners. After posting, Appellant received a message from Ms. Kilo and the two exchanged contact information and Snapchat usernames.[4] Appellant then contacted Ms. Kilo via Snapchat. At the time they connected, Appellant was 21 years-old and Ms. Kilo was 14 years-old. Appellant maintains that Ms. Kilo told him she was 16 years of age and he was not aware that Ms. Kilo was actually 14.

_____

[1] 10 U.S.C. §§ 934, 882.

[2] Other than the names of Appellant, the judges, and counsel, all names in this opinion are pseudonyms.

[3] R. at 248.

[4] *Id.*

In June 2020, Appellant solicited and received two nude digital images of Ms. Kilo. The images were saved in a password protected folder on Appellant's phone.[5]

Ms. Kilo subsequently blocked Appellant on Snapchat.[6] About four weeks after being blocked, Appellant reached out to Ms. Kilo on the social media application Instagram. Ms. Kilo informed Appellant that she had blocked him on Snapchat because she was uncomfortable with their relationship and she did not want to get in trouble.[7] Appellant proceeded to convince Ms. Kilo to begin communication with him again by telling her they could just be friends. Ms. Kilo agreed, and they began conversation over Snapchat once more, resuming their DDLG activities shortly after.

In September 2020, the Department of the Air Force Office of Special Investigations notified Naval Criminal Investigative Service [NCIS] that a Marine was allegedly soliciting nude images from a 14-year-old.[8] In addition to the nude images, NCIS agents also recovered sexually explicit messages sent between Appellant and Ms. Kilo.[9]

Later, in November 2020, an individual purporting to be Ms. Kilo's father contacted Appellant by phone. Appellant alleges this person instructed him to cease communication with Ms. Kilo.[10] Appellant also claimed at trial the individual told Appellant that Ms. Kilo had medical expenses that needed to be paid.[11] In order to make amends for his improper and indecent communication with Ms. Kilo, Appellant agreed to send money to Ms. Kilo's father for the purported hospital bills. From November 2020 to the end of 2021, Appellant sent approximately $700 a month to the purported father.[12] In total, Appellant sent at least $7,748.[13]

---

[5] R. at 248-49.

[6] Pros. Ex. 2.

[7] Defense Ex. C.

[8] Pros. Ex. 2.

[9] Pros. Ex. 3.

[10] R. at 126-31; Defense Exs. I-J. The record is silent as to whether the individual who received the money was actually Ms. Kilo's father.

[11] R. at 126-31; Defense Exs. I-J.

[12] Defense Exs. I-J.

[13] *Id.*

Appellant was charged with one specification each of possession and production of child pornography, two specifications of sexual abuse of a child (involving indecent exposure and indecent communication), and one specification of soliciting the production of child pornography with a potential maximum confinement of 80 years. The convening authority agreed to withdraw and dismiss the specification of production of child pornography, and the two specifications of sexual abuse of a child as part of the plea agreement bringing down the maximum confinement to 20 years.

## II. DISCUSSION

### A. Standard of Review and the Applicable Law

We review sentence appropriateness de novo.[14] This Court may only affirm "the sentence, or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[15] In exercising this function, we seek to ensure that "justice is done and that the accused gets the punishment he deserves."[16] The review requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[17] We have significant discretion in determining sentence appropriateness, but may not engage in acts of clemency.[18]

A court-martial may adjudge any punishment authorized, except "[i]f the military judge accepts a plea agreement with a sentence limitation, the court-martial shall sentence the accused in accordance with the limits established by the plea agreement."[19] Additionally, "[t]he punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense."[20]

---

[14] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[15] Article 66(d)(1), UCMJ.

[16] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[17] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation omitted).

[18] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010). *See also United States v. Kerr*, No. 202200140, 2023 CCA LEXIS 434 at *9 (N-M. Ct. Crim. App. Oct. 17, 2023) (unpublished) (setting aside the punitive discharge as inappropriately severe).

[19] Rule for Courts-Martial [R.C.M.] 1002(a)(2).

[20] Article 56(a), UCMJ.

**B. Analysis**

Appellant asserts that a sentence of confinement for 60 months is inappropriately severe and should be reassessed to include confinement for only 30 months. Specifically, Appellant argues: (1) the facts and circumstances of the case are not as egregious as they appear; (2) Appellant fully cooperated with NCIS; (3) Appellant showed remorse by sending money to an individual he believed to be the father of Ms. Kilo; (4) Appellant has no additional record of disciplinary history; and (5) similar cases have resulted in less confinement.

Appellant's crimes of possessing child pornography and soliciting a minor to produce child pornography and send it to him are serious offenses that warrant severe punishment. Given the facts of this case, the terms of Appellant's plea agreement, and the sentence adjudged, we find that the adjudged sentence did not exceed the terms of the plea agreement and is not inappropriately severe. Appellant committed serious offenses with a minor child. His relatively cooperative dealings with NCIS after his crime was discovered is not persuasive.[21]

Appellant argues that his contrition over the incident compelled him to help Ms. Kilo and her family by sending money to Ms. Kilo's father for medical bills allegedly incurred by Ms. Kilo.[22] There is no evidence in mitigation that would warrant sentence revision. Appellant's record prior to committing these crimes was properly introduced and considered.[23] When Appellant's military character is considered in conjunction with his serious crimes against a minor, this Court does not finds the sentence inappropriately severe.

Appellant urges us to compare his case to three unrelated cases where the accused received lighter sentences than Appellant for similar or more serious offenses.[24] We may engage in sentence comparison only "in those rare instances in which sentence appropriateness can be fairly determined only by

---

[21] *See United States v. Jablonska*, No. 200101210, 2005 CCA LEXIS 7, *6 (N-M. Ct. Crim. App. Jan. 13, 2005) (similarly noting that post-arrest cooperation with law enforcement authorities was not persuasive).

[22] As noted above, it is unclear who the money actually went to, but Appellant believed it was being sent to Ms. Kilo's family.

[23] *See* Dep't of the Navy, *Marine Corps Manual w/ch 1-3*, para. 2500 (Mar. 21, 1980) (noting that Marines are expected to maintain exceptionally high standards in the performance of their duties and in the conduct of their personal affairs).

[24] *United States v. Pearson*, 81 M.J. 592 (N-M. Ct. Crim. App. 2021); *United States v. Toschiaddi*, No. 200800044, 2009 WL 2151149 (N-M. Ct. Crim. App. Jul. 16, 2009); *United States v. Miles*, 71 M.J. 671 (N-M. Ct. Crim. App. 2012).

reference to disparate sentence adjudged in closely related case."[25] "Closely related" cases involve "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the service members whose sentences are sought to be compared[.]"[26]

Here, we find no closely related case appropriate for sentence comparison. Under *United States v. Wacha*, this Court may, but is not required to, consider the sentences in unrelated cases.[27] Upon careful review of the sentences referenced by Appellant, we note that each of the cases did not involve a bargained-for plea agreement. Here, facing the possibility of 80 years confinement, Appellant entered into a plea agreement that reduced his criminal liability and decreased his confinement exposure to 60 months. Within this context, 60 months confinement is not inappropriately severe.

Appellant's sentence was within the limits he agreed to. "Other than to ensure that the appellant's approved sentence is one that 'should be approved,' we *generally* refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement or a [convening authority]'s lawful exercise of his authority to grant clemency to an appellant."[28]

This Court has held before that the mere existence of another service member elsewhere committing similar offenses and receiving a lighter sentence does not entitle future offenders to the same benefit.[29]

We therefore find, Appellant's bargained-for period of confinement is not inappropriately severe based on the record of this case.

---

[25] *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 C.M.A. 1985)).

[26] *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999).

[27] *United States v. Wacha*, 55 M.J. 266 (C.A.A.F. 2001).

[28] *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, *7 (N-M. Ct. Crim. App. Mar. 22, 2016) (unpublished) (quoting Article 66(c), UCMJ) (citing to *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)); *see also United States v. Casuso*, No. 202000114, 2021 CCA LEXIS 328, *8 (N-M. Ct. Crim. App. Jun. 30, 2021) (unpublished) (questioning an appellant's "claim of inappropriate severity when the sentence he received was within the range of punishment he was expressly willing to accept in exchange for his pleas of guilty"); *Kerr*, 2023 CCA LEXIS 434 at *9 (setting aside the punitive discharge as inappropriately severe).

[29] *United States v. Williams*, No. 201600197, 2017 CCA LEXIS 702, at *10 (N-M. Ct. Crim. App. Nov. 16, 2017) (unpublished).

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[30]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[30] Articles 59 & 66, UCMJ.